# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAPATIO FOODS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> SULAIMAN WALEED RODRIGUEZ, <br><br> Defendant. | Case No. 1:19-cv-00335-DAD-SKO <br><br> **FINDINGS AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION BE GRANTED** <br><br> (Doc. 16) <br><br> **OBJECTIONS DUE: 21 DAYS** |

## I. INTRODUCTION

On August 6, 2019, Plaintiff Tapatio Foods, LLC filed a motion for default judgment against Defendant Sulaiman Waleed Rodriguez.[1] (Doc. 16.) No opposition to Plaintiff's motion was filed. The motion was referred to the undersigned for findings and recommendation pursuant to 28 U.S.C. § 636(b). The undersigned reviewed Plaintiff's papers and all supporting material and found the matter suitable for decision without oral argument pursuant to Local Rule 230(g). The hearing set for October 16, 2019, was therefore VACATED. (Doc. 23.)

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's motion for default judgment and permanent injunction be GRANTED.

## II. BACKGROUND

On April 3, 2019, Plaintiff filed the operative First Amended Complaint ("FAC") alleging claims for trademark infringement; unfair competition under the Lanham Act, 15 U.S.C. § 1125;

---

[1] Defendants Hussain Mohamed Alfarh, Smokers Paradise & More Inc., Paul Anthony Salcido, and Natural Medicinals, Inc., were voluntarily dismissed by Plaintiff. (Docs. 13, 14, 15, 17.) Defendant Sulaiman Waleed Rodriguez is the sole remaining defendant.

unfair competition under California law; and trademark dilution by tarnishment.  (Doc. 5.) Plaintiff states that it is the owner of four United States Trademark Registrations[2] (the "Tapatio Marks") related to its meatless hot sauce and apparel sold in grocery stores, retail outlets, and restaurants nationwide.  (*See id.* ¶¶ 10–17.)

Plaintiff alleges Defendant advertises and sells meatless hot sauce infused with T.H.C., a derivative of marijuana, and other related products under the brand name "Tiowaxy" and "a variety of marks that are confusingly similar to the TAPATIO Marks[.]"  (*Id.* ¶¶ 20–33.)

The FAC seeks injunctive relief in the form of "a permanent injunction restraining Defendants, any companies or business that they own, their officers, directors, agents, employees, representatives and all persons acting in concert with Defendants, from engaging in any further trademark infringement, unfair competition and dilution[.]"  (*Id.* at 11.)

Defendant was served on April 15, 2019.  (Doc. 10.)  To date, Defendant has not responded to the FAC.  Plaintiff requested that the Clerk enter default against Defendant on June 21, 2019, (Doc. 11), which was entered on June 24, 2019.  (Doc. 12.)  Plaintiff then filed a motion for default judgment and permanent injunction against Defendant, which is now before the Court.  (Doc. 16.)

## III. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a).  It is within the sole discretion of the court as to whether default judgment should be entered.  *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  A defendant's default by itself does not entitle a plaintiff to a court-ordered judgment.  *See id.*  Instead, the Ninth Circuit has determined a court should consider seven discretionary factors, often referred to as the "*Eitel* factors," before rendering a decision on default judgment.  *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  The *Eitel* factors include (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and

---
[2] United States Trademark Registration Nos. 1,228,964, 4,997,043, 3,837,981 and 4,545,088.

1 (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See id.*

A plaintiff is required to prove all damages sought in the complaint. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1992). In addition, any relief sought may not be different in kind from, or exceed in amount, what is demanded in the complaint. Fed. R. Civ. P. 54(c). If the facts necessary to determine the damages are not contained in the complaint, or are legally insufficient, they will not be established by default. *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Finally, once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *See Televideo Sys., Inc.*, 826 F.2d at 917.

**B.  Analysis**

    **1.  The *Eitel* Factors Weigh in Favor of Granting a Default Judgment**

        **a.  Prejudice to Plaintiff if Default Judgment is Not Granted**

If default judgment is not granted, Plaintiff will effectively be denied a remedy until Defendant participates and makes an appearance in the litigation—which may never occur. Denying Plaintiff a means of recourse is, by itself, sufficient to meet the burden imposed by this factor. *See, e.g., Philip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003); *Adobe Systems Inc. v. Cain*, No. 5:08-cv-02435 RMW, 2008 WL 5000194, at *3 (N.D. Cal. Nov. 21, 2008) ("[I]f the default judgment motion is denied, [the plaintiff] will be left without a remedy or means to prevent [Defendant's] continued infringement.").

        **b.  Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint**

The next relevant *Eitel* factors include an evaluation of the merits of the substantive claims pled in the complaint as well as the general sufficiency of the complaint. In weighing these factors, courts evaluate whether the complaint is sufficient to state a claim that supports the relief sought. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-

pleaded or to admit conclusions of law.") (internal quotation marks omitted).

Here, Plaintiff pleads claims for (1) trademark infringement under 15 U.S.C. § 1114; (2) unfair competition under 15 U.S.C. § 1125; (3) unfair competition under Cal. Bus. & Prof. Code § 17200; and (4) dilution by tarnishment under 15 U.S.C. § 1125(c)(2)(C). (Doc. 5 ¶¶ 39–59.)

### i. Trademark Infringement and Unfair Competition (Counts 1–3)

The Court analyzes Plaintiff's claims for trademark infringement under 15 U.S.C. § 1114, unfair competition under 15 U.S.C. § 1125, and unfair competition under California law together, because if a plaintiff sufficiently pleads a claim for trademark infringement, it also sufficiently pleads claims for unfair competition under 15 U.S.C. § 1125 and California law. *See, e.g., Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1153 (9th Cir. 2002) ("[A]ctions pursuant to . . . § 17200 are 'substantially congruent' to claims made under the Lanham Act") (citation omitted); *Spy Optic, Inc. v. Alibaba.Com, Inc.*, 164 F. Supp. 3d 755, 764 (C.D. Cal. 2015); *Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*, 998 F. Supp. 2d 890, 897 (C.D. Cal. 2014); *Phillip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1122 (C.D. Cal. 2007) ("Proof of trademark infringement under the Lanham Act independently constitutes unfair competition under California law"); *Grey v. Campbell Soup Co.*, 650 F. Supp. 1166, 1173 (C.D. Cal. 1986) ("The tests for infringement of a federally registered mark under § 32(1), 15 U.S.C. § 1114(1), infringement of a common law trademark, unfair competition under § 43(a), 15 U.S.C. § 1125(a), and common law unfair competition involving trademarks are the same.").

To prevail on a claim for trademark infringement, a plaintiff must show "(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012) (quoting *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011)); *see also Chan Luu, Inc. v. Guang Gao*, No. CV 13-2297 FMO (JCX), 2014 WL 12567141, at *4 (C.D. Cal. Jan. 27, 2014) ("To prevail on its claims under the Lanham Act for trademark infringement . . . plaintiff must demonstrate that, '(1) it owns a valid and protectable trademark, and (2) the defendant used in commerce a similar mark without authorization in a manner likely to cause consumer confusion, deception, or mistake.") (citation omitted).

### Trademark Ownership

"Registration of a mark is prima facie evidence of the validity of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the mark in connection with the goods specified in the registration." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (citing 15 U.S.C. § 1115(a)). Here, Plaintiff alleges that it owns four registered trademarks in the Tapatio Marks and attaches the registrations to the FAC. (Doc. 5 ¶¶ 10–13; Doc. 5-1.) Thus, Plaintiff has sufficiently established its ownership interest in the Tapatio Marks. *See Pom Wonderful*, 775 F.3d at 1124.

### Likelihood of Confusion

In determining likelihood of confusion, district courts in the Ninth Circuit consider the following factors: "(1) strength of the protected mark; (2) proximity and relatedness of the goods; (3) type of goods and the degree of consumer care; (4) similarity of the protected mark and the allegedly infringing mark; (5) marketing channel convergence; (6) evidence of actual consumer confusion; (7) defendant's intent in selecting the allegedly infringing mark; and (8) likelihood of product expansion." *Id.* (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)). The factors are "fluid," and a "plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005).

As alleged in the FAC, the Tapatio Marks appear on Plaintiff's products as the word "Tapatio" in red arching font with the image of a Mexican "Charro"[3] in a sombrero, yellow shirt and red tie, along with a red banner. (*See* Doc. 5 ¶¶ 14, 25–30.) The FAC alleges that Defendant's infringing "Tiowaxy" marks are "confusingly similar" to the Tapatio Marks because the "Tiowaxy" marks include the word "Tiowaxy" in the same red arching font with the image of a Mexican "Charro" in a sombrero, yellow shirt, and red tie, and a red banner. (*See id.* ¶¶ 20–32.)

The FAC further alleges that the Tapatio Marks are "strong marks" subject to extensive advertising and applied to products available in stores and restaurants nationwide. (*Id.* ¶¶ 16–18.) Plaintiff alleges that both Plaintiff and Defendant manufacture and distribute meatless hot sauce

---
[3] Plaintiff defines "Charro" as a "traditional horseman from Mexico." (Doc. 16-4 at 5.)

and apparel, and Defendant advertises his "Tiowaxy" products to the "same class of consumers as goods sold by Tapatio" and "in the same marketing channels." (*Id.* ¶¶ 22–24.)

These facts are taken as true following the entry of Defendant's default, *see Televideo Sys., Inc.*, 826 F.2d at 917, and support Plaintiff's claim that there is a likelihood of confusion between the Tapatio Marks and Defendant's infringing "Tiowaxy" marks. First, the Tapatio Marks are "strong" marks because the image of a Mexican "Charro" and the word "Tapatio" are arbitrary as applied to meatless hot sauce and apparel. *See Entrepreneur Media*, 279 F.3d at 1141. Plaintiff's products and the "Tiowaxy" products are in direct competition with each other and thus "are in the closest proximity under the likelihood of confusion analysis." *See Conversive Inc. v. Conversagent, Inc.*, 433 F. Supp. 2d 1079, 1091 (C.D. Cal. 2006). Both Plaintiff and Defendant use the same marketing channels, including Instagram and other social media platforms, and hot sauce is an inexpensive product likely to be an "impulse" purchase by most consumers, which increases the likelihood of confusion. *See Team Gordon, Inc. v. Specialized Bicycle Components, Inc.*, Case No. SACV 10-1379 AG (RNBx), 2010 WL 5058624, at *4 (C.D. Cal. Nov. 18, 2010).

Finally, both marks have the image of a Mexican "Charro" in a sombrero, yellow shirt and red tie, a red banner, and red arching font. Although the marks differ in some ways as well, "similarities are weighed more heavily than differences" in analyzing the likelihood of confusion. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000); *see also Sleekcraft*, 599 F.2d at 350 ("For related goods, the danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists"); *Brooklyn Brewery Corp. v. Black Ops Brewing, Inc.*, 156 F. Supp. 3d 1173, 1179–80 (E.D. Cal. 2016) ("[L]ess similarity between the marks will suffice when the goods are complementary, the products are sold to the same class of purchasers, or the goods are similar in use and function."). Further, although the names "Tapatio" and "Tiowaxy" are different, product names are considered in the context of all other features of the mark when determining similarity of marks, and the names need not be identical or nearly identical to support a finding that marks are similar. *See, e.g., Perfumebay.com Inc. v. eBay Inc.*, 506 F.3d 1165, 1174 (9th Cir. 2007) (finding "Perfumebay.com" and "eBay.com" to be similar). *Cf. Monster Energy Co. v. BeastUp*

*LLC*, 395 F. Supp. 3d 1334, 1354–55 (E.D. Cal. 2019) (noting "several visual similarities" between marks with the names "Monster Energy" and "BeastUp" and finding triable issue of fact regarding similarity of the marks factor).

The Court therefore finds that the FAC sufficiently states a claim for trademark infringement under the Lanham Act. As the FAC sufficiently states a claim for trademark infringement, it also sufficiently states a claim for unfair competition under the Lanham Act and unfair competition under California law. *See Entrepreneur Media*, 279 F.3d at 1153; *Spy Optic*, 164 F. Supp. 3d at 764; *Kythera Biopharmaceuticals*, 998 F. Supp. 2d at 897; *Liu*, 489 F. Supp. 2d at 1122; *Grey*, 650 F. Supp. at 1173.

### ii. Dilution by Tarnishment (Count 4)

To show trademark dilution, a plaintiff must allege: "(1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008). "'Tarnishment' occurs when a famous mark is linked to products of poor quality or is portrayed in an unwholesome manner." *Panavision Int'l, L.P. v. Toeppen*, 945 F. Supp. 1296, 1304 (C.D. Cal. 1996). "[T]o establish similarity in a dilution by tarnishment case, a party must show only 'similarity,' not substantial similarity or nearly identical, between the famous mark and the accused mark." *VIP Products, LLC v. Jack Daniel's Properties, Inc.*, 291 F. Supp. 3d 891, 901 (D. Ariz. Jan. 30, 2018) (citing *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158, 1159 (9th Cir. 2011)).

Courts consider the following nonexclusive factors in determining whether a mark is "famous": (1) "[t]he duration, extent, and geographic reach of advertising and publicity of the mark"; (2) "[t]he amount, volume, and geographic extent of sales of goods or services offered under the mark"; and (3) "[t]he extent of actual recognition of the mark." *Monster Energy*, 395 F. Supp. 3d at 1363 (quoting *Jada Toys*, 518 F.3d at 635). "Tarnishment occurs when a famous mark is improperly associated with an inferior or offensive product or service." *Panavision Int'l, L.P.*, 141 F.3d at 1326 n.7.

The FAC alleges that the Tapatio Marks are famous and distinctive; Defendant is making use of similar marks in commerce; Defendant's use began after the Tapatio Marks became famous; and the use of the infringing "Tiowaxy" mark is likely to cause dilution by tarnishment because Defendant's hot sauce is infused with T.H.C., a substance derived from marijuana, which is illegal under federal law and in many states. (*See* Doc. 5 ¶¶ 19, 30–33, 35–38.) The FAC further alleges that the Tapatio Marks are the subject of "extensive advertising . . . on billboards, in magazines, on the internet and social media, in commercials, and in tradeshows," and are available for sale in grocery stores, retailers, and restaurants nationwide. (*Id.* ¶¶ 16, 17.)

Plaintiff has alleged sufficient facts to state a plausible claim to relief for dilution by tarnishment. Plaintiff's allegations that the Tapatio Marks are famous, the subject of "extensive advertising" and available "nationwide" are sufficient, at this stage, to allege that the Tapatio Marks are famous as defined under 15 U.S.C. § 1125. *See Gianni Versace, S.p.A., v. Versace 19.69 Abbigliamento Sportivo SRL*, 328 F. Supp. 3d 1007, 1024 (N.D. Cal. 2018). Plaintiff also sufficiently alleges that Defendant is making use of a similar mark in commerce, and that his use of the mark began after the Tapatio Marks became famous. *See Jada Toys*, 518 F.3d at 634. Finally, Plaintiff's allegation that Defendant's product is infused with T.H.C., a derivative of marijuana, is sufficient to allege likelihood of tarnishment. *See Ringling Brothers-Barnum & Bailey Combined Shows, Inc. v. B.E. Windows Corp.*, 937 F. Supp. 204, 209 (S.D.N.Y. 1996) ("Tarnishment may result from an association with obscenity, sexual activity, or illegal activity[.]").

        **c.**        **Sum of Money at Stake**

The fourth *Eitel* factor, the sum of money at stake, weighs in favor of granting default judgment. Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the defendant's actions. *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594-JSW, 2007 WL 1545173 at *12 (N.D. Cal. May 29, 2007). Here, although the FAC requests statutory and compensatory damages, Plaintiff states in its motion for default judgment that it is <u>not</u> requesting monetary damages and is only seeking injunctive relief. (Doc. 16-1 at 14.) This factor favors the entry of default judgment where, as here, the plaintiff is seeking

only injunctive relief and is not seeking monetary damages. *See PepsiCo, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1176–77 (C.D. Cal. 2002).

### d. Dispute Concerning Material Facts

With regard to this factor, no genuine issues of material fact are likely to exist because the allegations in the complaint are taken as true, *Televideo Sys.*, 826 F.2d at 917-18, and Defendant has submitted nothing to contradict the well-pleaded allegations in the FAC. Accordingly, this factor favors entry of default judgment.

### e. Default Due to Excusable Neglect

Defendant failed to file responsive pleadings or oppose Plaintiff's motion for default judgment and permanent injunction, despite being given multiple opportunities to do so, (*see* Docs. 16, 20.) The Court has no evidence before it that Defendant's failure to participate in the litigation is due to excusable neglect. Thus, this factor weighs in favor of granting default judgment.

### f. Strong Policy Favoring Decision on the Merits

This factor inherently weighs strongly against awarding default judgment in every case. In the aggregate, however, this factor is outweighed in consideration of the other applicable factors that weigh in favor of granting default judgment.

## 2. Terms of the Judgment

### a. Injunctive Relief

While analysis of the *Eitel* factors supports a default judgment, the Court also considers the terms of the judgment sought by Plaintiff. Plaintiff's FAC and motion for default judgment seek injunctive relief in the form of a permanent injunction against Defendant. (Doc. 5 at 11; Doc. 16-4 at 4–6.)

Under the Lanham Act, the Court may "grant injunctions, according to the principles of equity and upon such terms as the court deems reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a). "[A]ctual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action." *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (citations omitted). To obtain a permanent injunction, the

1  plaintiff must show: (1) it has suffered irreparable injury; (2) remedies at law, such as monetary
2  damages, are inadequate to compensate for that injury; (3) considering the balance of hardships
3  between the parties, a remedy in equity is appropriate; and (4) the public interest would not be
4  disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391–92
5  (2006). Permanent injunctions are frequently granted in trademark cases, and the Ninth Circuit
6  has directed that "[i]njunctive relief is the remedy of choice for trademark and unfair competition
7  cases, since there is no adequate remedy at law for the injury caused by the threat of continuing
8  infringement." *See Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

The Court finds that a permanent injunction is appropriate here. Plaintiff has sufficiently demonstrated irreparable harm in that Defendant's continuing use of the infringing marks is likely to cause confusion among consumers. *See Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n.3 (9th Cir. 1989); *Microsoft Corp. v. Evans*, No. 1:06-cv-01745-AWI-SMS, 2007 WL 3034661, at *10 (E.D. Cal. Oct. 17, 2007), *report and recommendation adopted*, 2007 WL 4209368 (E.D. Cal. Nov. 28, 2007) ("Demonstrating a likelihood of confusion is generally sufficient in trademark infringement or unfair competition cases to permit a presumption that the plaintiff will suffer irreparable harm.").

Further, the owner of a registered trademark "is generally entitled to injunctive relief because there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Microsoft Corp.*, 2007 WL 3034661, at *10 (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180–81 (9th Cir. 1988)). There is also a strong public interest in protecting consumers and "[i]n cases where the infringing use is for a similar service, broad injunctions are especially appropriate." *Century 21*, 846 F.2d at 1180–81. Finally, injunctive relief under the Lanham Act is appropriate where the defendant fails to respond to the complaint and the Court grants default judgment. *Philip Morris*, 219 F.R.D. at 502 (finding permanent injunctive relief appropriate because the claims otherwise warranted injunction, the defendant had chosen to ignore the lawsuit, and failure to grant injunctive relief would expose the plaintiff to continuing irreparable harm).

The Court further finds that the terms of the permanent injunction requested by Plaintiff

are generally reasonable with the exception of language included in the proposed order attached to the motion directing "[a]ny social media providers or digital content hosts who receive notice of this order" to remove trademarks identified in the order from their platforms, and to grant Plaintiff and its representatives access to Defendant's social media accounts. (*See* Doc. 16-4 at 5–6.) Plaintiff has not cited to any legal authority for this request and the Court finds the inclusion of the language unnecessary to carry out the purpose of the injunction in this case.

The remaining terms are consistent with the terms of permanent injunctions previously issued in cases filed by Plaintiff in this district and in the Central District of California.[4] *See Tapatio Foods, LLC v. Pulido*, Case No. 1:18-cv-01611-LJO-BAM, Doc. 13 (E.D. Cal. Jan. 15, 2019); *Tapatio Foods, LLC v. Ponce*, Case No. 2:17-cv-07530-MWF-MRW, Doc. 31 (C.D. Cal. Feb. 27, 2018); *Tapatio Foods, LLC v. Granados*, Case No. 2:17-cv-07532-MWF-MRW, Doc. 23 (C.D. Cal. Feb 12, 2018).

Thus, the Court recommends entering the proposed permanent injunction without the language regarding third party social media providers described above.

### b. Attorneys' Fees and Costs

Under the Lanham Act, the Court may "award reasonable attorney fees to the prevailing party" in "exceptional" cases. 15 U.S.C. § 1117(a). Here, Plaintiff does not request an award of attorneys' fees or costs. (*See generally* Doc. 16-1.)

### IV. RECOMMENDATION

Based on consideration of the motion for default judgment and permanent injunction, (Doc. 16), and the FAC, (Doc. 5), the Court RECOMMENDS that:

1. Plaintiff's motion for default judgment and permanent injunction be GRANTED;
2. Judgment be entered in Plaintiff's favor and against Defendant Sulaiman Waleed Rodriguez;
3. Defendant be permanently enjoined as follows:

   Defendant and all those acting in concert or privity with Defendant who receive

---

[4] The Court may take judicial notice of its own records and the records of other courts. *See United States v. Howard*, 381 F.3d 873, 876 n.1 (9th Cir. 2004); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980); *see also* Fed. R. Evid. 201.

11

actual notice of this Order by personal service or otherwise shall:

    a. Permanently cease using and refrain from adopting for any product or service, or in any marketing material:

        i. any trademarks containing the words TAPATIO;

        ii. any marks confusingly similar to the TAPATIO MARKS;[5]

        iii. the TIOWAXY Mark;

        iv. the TIOWAXY and Design Mark;

        v. any trademarks that bear an image of a Charro (meaning a traditional horseman from Mexico); and

        vi. any marks featuring text in an arching red font.

    b. Recall and destroy any of its marketing material, letterhead, business cards, signs, banners, clothing, or other media whether physical or digital, bearing the trademarks identified in ¶ a above.

    c. Change any username, under its control, for all social media and email accounts to one that does not contain the phrase "TAPATIO" or any marks confusingly similar to TAPATIO.

    d. Be restrained and enjoined from telling any customer, vendor, distributor or other person or business that they are in any way related to or affiliated with Tapatio.

    e. The Court shall retain jurisdiction to enforce this permanent injunction.

Furthermore, Plaintiff is HEREBY ORDERED to mail a copy of these findings and recommendations to Defendant at Defendant's last known address.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C.

---

[5] United States Trademark Registration Nos. 1,228,964, 4,997,043, 3,837,981 and 4,545,088.

§ 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: __**November 19, 2019**__             /s/ *Sheila K. Oberto*
                                                                           UNITED STATES MAGISTRATE JUDGE